MARTHA B. DECOSTER, appellant,

*vs.*

GEORGE C. WING, administrator.

Oxford.    Opinion November 7, 1884.

*Descent of property. R. S., c. 75, § 1.*

When a minor dies never having been married, leaving no parents, brother or sister or the issue of any brother or sister, his property, though inherited from his father, descends to his surviving maternal grandmother, in preference to his uncles or aunts.

ON EXCEPTIONS.

Appeal from the decree of distribution of the probate court in the estate of defendant's intestate, Charles L. Bicknell.

The opinion states the material facts.

*J. and F. H. Appleton*, for the appellant.

The question presented is whether the estate descends to the maternal grandmother or to the uncles and aunts and their descendants on the paternal side. The estate came from the paternal side. It is clear, if Charles L. Bicknell, had died before his father, Charles Bicknell, that Nancy Loring, the maternal grandmother, would not have been the heir of the latter. The estate would have descended to the heirs of the latter — that is, to the heirs of Charles Bicknell, the father.

By R. S., c. 75, § 1, rule VI, "when a minor dies, unmarried, leaving property inherited from either of his parents, it descends to the other children of the same parent and the issue of the deceased, in equal shares, if they are of the same degree of kindred, otherwise according to the right of representation." The estate in question was inherited from the father. It should descend to the heirs of the father.

In commenting upon a similar statute in Massachusetts, Chief Justice SHAW says in *Nash* v. *Cutler*, 16 Pick. 499, "the effect is that when upon the descent of an estate to children, one of

them shall happen to die in infancy, that is, at any time before his arriving at the age, at which by law, he has the power of disposing of his estate, and before he has by marriage, contracted obligations and established new connections, which change his relative situation to others, his share of the inheritance, that is, his proportion of the intestate estate . . . shall go just in the same manner as if such child had died in the lifetime of the ancestor, or in other words to those who would have taken the same share if such child had not existed."

In discussing this subject KENT, J., in *Benson* v. *Swan*, 60 Maine, 160, says : " When a minor dies, never having married, the law intends that the specific inherited estate shall in effect go back to the parent's estate and become a part of it, as if the child had died before the parent." This applies precisely to the case at bar. Had Charles L. died before his father, there would be no question as to the result. Nobody would have pretended that Nancy Loring had the scintilla of a claim.

In *Cables* v. *Prescott*, 67 Maine, 583, the sixth rule was held not to apply because the minor had no estate inherited from either of his parents. The inference is unavoidable, that if the estate had been thus inherited, the decision would have been different and in accordance with the cases already cited.

The exceptions, we contend, must be sustained.

*George C. and Charles E. Wing*, for the appellee.

VIRGIN, J. The decedent died under age, not having been married, leaving property for distribution, some of which he inherited from his father and the remainder from his paternal grandfather. At the time of his decease, he left no parents, brother or sister, but did leave a maternal grandmother, three maternal uncles and one maternal aunt, two paternal aunts and two children of a deceased paternal aunt.

The judge of probate decreed that the maternal grandmother is entitled to the property as next of kin, under the provisions of R. S., c. 75, § 1, rule 5. The paternal aunts claimed that they and the children of their deceased sister should take the

property under clause 6, and appealed to the supreme court of probate.

Personal property being distributed by the same rules as regulate the descent of real estate, (subject to certain provisions not material to the decision of this case) the question is, under which rule of descent does the property in controversy fall.

It is common knowledge among the members of the profession that our statutes of descent were derived substantially (through the provincial statutes 4 Wm. and Ma. c. 2; 9 Ann, c. 2, and the early statutes of our mother commonwealth) from the English statues of distribution 22 and 23, Car. 2, c. 10, and 1 Jas. 2, and that they apply equally to personal and real estate. *Sheffield* v. *Lovering*, 12 Mass. 490; Reeve, Des. xxvi. What is now clause 6, under which the appellants claim the property, was, in the Stat. 4, Wm. and Ma. in the form of a proviso to the preceding rule, providing, " if any of the children happen to die before he or she come of age or be married, the portion of such children shall be equally divided among the survivors." An. Chart. 231. The mother took nothing. " This term ' survivors,' " (say the court in *Runey* v. *Edmunds*, 15 Mass. 292) "must have reference to the surviving children, as a distribution among children is the subject matter of the whole proviso."

These provisions remained the same until revised and substantially incorporated in Mass. St. 1783, c. 36. But the language having been somewhat changed and the meaning rendered less clear, "the obscurity in this and other particulars was supposed to have been one of the principal motives for the new statute on this subject, of 1806, c. 90. The chief object of the legislature in this statute (which is understood to have been prepared by the late Ch. J. PARSONS) seems to have been, not to establish new rules of descent and distribution, but to adopt and confirm, in clear and explicit language, the legal construction which had been given to the preceding statutes, and which had been considered the law of the country for more than a century." *Sheffield* v. *Lovering*, 12 Mass. 490, 493.

The Mass. st. 1806, c. 90, provided *inter alia*: " If the intestate leave no issue, father, brother or sister then his estate

shall descend to his mother, if any; but if there be no mother, then to his next of kin in equal degree," etc : " Provided however, that when any child shall die under age, not having been married, his share of the inheritance that came from his father or mother, shall descend in equal shares to his father's or mother's other children then living respectively, and to the issue of such children as are then dead, if any, by right of representation."

Our St. 1821, c. 38, § 1, is a literal transcript of the foregoing; and it remained the same until the revision of 1841, when the legislature with the evident intention of rendering the meaning of the proviso more clear, used a few more words to express it, thereby making it read : " Provided however, that if any person shall die leaving several children, or leaving one child and the issue of one or more others, and any such surviving child shall die under age, not having been married, all the estate which came to the deceased child by inheritance from such deceased parent, shall descend in equal shares to the other children of the same parent, and to the issue of such other children who shall have died, by right of representation." R. S., (1841) c. 93, § 1, cl. 6.

" This proviso," said Ch. J. SHAW, speaking of the same clause in Mass. st. 1806, c. 90, § 1, hereinbefore quoted, "is an exception from the generality of the antecedent rule." *Nash* v. *Cutler*, 16 Pick. 498–9.

It is the only provision in the statute of descent which makes it necessary to inquire from what source an estate is derived in order to settle its descent or distribution. *Kelsey* v. *Hardy*, 20 N. H. 479. It relates solely to property inherited, *i. e.* coming to the decedent by operation of law, as contra distinguished from that acquired by any lawful act, including title by deed and by devise. It relates to the descent and distribution of the inherited property of a child who died under age, never having been married, among other children only, or among the issue of other deceased children, and makes no allusion to any ascending line of descent. Or to repeat the comprehensive language of C. J. PARKER, quoted *supra*, "a distribution among children is the subject matter of the whole proviso."

To bring property within this proviso, therefore, it must be inherited from one of the decedent's parents and not be derived by purchase or inheritance from any other source. *Nash* v. *Cutler*, 16 Pick. 491; *Sedgwick* v. *Minot*, 6 Allen, 171; *Cables* v. *Prescott*, 67 Maine, 583. And to bring a case within the terms of the proviso so far as persons are concerned, there must be (1) several children, one of whom died under age without having been married; or (2) one child who died as above and the issue of one or more others. In other words, if the minor whose estate is to be distributed left at his decease no brother or sister, nor the issue of any, then his estate does not fall within the terms of the proviso, but, although inherited, it must go by the general rule unaffected by the terms of the former.

This same proviso in substance and meaning was incorporated into the revision of 1857; although in attempting to condense it, "the language," said the late Judge KENT in *Benson* v. *Swan*, 60 Maine, 160, 163, "got a little mixed," so much so, that the counsel for the defense in the case last cited, contended that the terms of the clause made it applicable only to cases where there are grandchildren as well as children. But the learned judge, after stating the defendant's claim, said: "We do not perceive any intention on the part of the legislature to change or limit the provisions clearly set out in the original statute, by the change of phraseology. We should require the most positive and unmistakeable evidence of such intent, because such a construction as is contended for, would be clearly in contravention of the spirit and intent of the provision."

It is urged, however, that the effect of this proviso is to place the estate of a deceased unmarried minor in the same situation as if he had died before the parent, or had never existed. This was the remark of JACKSON, J., in *Sheffield* v. *Lovering*, *supra*. But the statement was based upon the assumption that there were one or more other children and was strictly correct. A like remark was also made by SHAW, C. J., in *Nash* v. *Cutler*, *supra*, and by KENT, J., in *Benson* v. *Swan*, *supra*, all based upon the fact that the deceased child left one or more brothers or sisters or the issue of one or more deceased brothers or

sisters and explanatory of the reason why this provision of the statute did not give any of the property of the minor to his mother. " General propositions of judges, however eminent, as rules of decisions," said the court in *Blanchard* v. *Russell*, " must be limited in their application to the facts, although they are not limited in their expression." 13 Mass. 7. "It is a general rule," said C. J. MARSHALL, "that the positive authority of a decision is co-extensive only with the facts on which it is made." · *Ogden* v. *Saunders*, 12 Wheat. 333. And the same eminent judge also said : "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision." *Cohens* v. *Virginia*, 6 Wheat. 399.

An examination of the Massachusetts and Maine cases cited above shows that the remark mentioned was intended to be limited to the facts of the respective cases. Thus SHAW, C. J., in construing the proviso, said : " We think the effect is, that where upon the descent of an estate to *children, one* of *them* shall happen to die in infancy — that is at any time before arriving at the age, at which, by law, he has the power of disposing of his estate, and before he has by marriage contracted obligations and established new connexions which change his relative situation to others, his share of the inheritance, that is, his portion of the estate, for the descent of which this statute is now providing, shall go just in the same manner as if such child had died in the life-time of the ancestor, or in other words, to those who would have taken the same share if such child had not existed. It directs that, it shall go *to the other children* of the same parent from which it came, which it would have done, had the child so dying not been in existence, at the time of the decease of such parent." *Nash* v. *Cutler*, 16 Pick. 498–9. This last sentence makes certain the intended extent of the preceding statement.

So Judge KENT, in the case cited, *supra*, in settling the descent of the estate of a child which died at the age of twenty-four

days, leaving a sister of the half-blood, said : " When a minor dies, never having been married, the law intends that the specific inherited property shall, in effect, go back to the parent's estate and become a part of it, as if the child had died before the parent," and cites the Massachusetts' cases *supra.* This statement of the learned judge was made, with reference, and should be considered as limited in its application, to the fact that there was another child. And that it was so intended conclusively appears from the next succeeding sentences : " The distinction and the reason for it are both obvious. The child having died a minor, never having been married, and having received a portion of the estate of his parent, which he leaves, the law deems it just that his share of the parent's estate should *go to the other children* and grandchildren." *Benson* v. *Swan,* 60 Maine, 161–2. We therefore cite the Massachusetts cases *supra* and *Benson* v. *Swan,* as supporting the position that when there is only one child and he dies leaving property inherited from his parent, and such child leaves no issue of any brother or sister, its descent or distribution does not fall within the proviso of R. S., (1841) c. 93, clause 6, but it does come within the provisions of the antecedent rule 5.

When the clause was revised and condensed as before seen, its meaning was somewhat obscure, and it was unintentionally limited to property inherited from the father only. Consequently, the legislature of 1870, substituted therefor, almost *in totidem verbis,* the original provision of statute 1821, omitting the words, "provided however." But the meaning is the same as in R. S., 1841, and has been incorporated in the revisions of 1871 and 1883 ; R. S., c. 75, § 1, clause 6.

The rule applicable to this property then, for want of the persons specified in clause 6, is rule 5. It becomes immaterial therefore, as before seen, that it was inherited from the decedent's parent ; and it must go to his "next of kin." Computed by the rules of the civil law (as required by R. S., c. 75, § 2) a maternal grandmother being of the second degree of kindred, and uncles and aunts of the third, the grandmother must take the property as this rule directs and not the uncles or aunts.

*Blackborough* v. *Davis*, 1 Peere, Wms. 41 ; Reeve. Desc. LVI ; *Cables* v. *Prescott*, 67 Maine.

> *Exceptions overruled. Decree of judge of probate confirmed. Remanded to probate court.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.